J-A24013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS MCCLENNAN | : | |
| | : | |
| Appellant | : | No. 81 EDA 2021 |

Appeal from the PCRA Order Entered November 23, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001506-2018

BEFORE: LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:         **FILED FEBRUARY 2, 2022**

      Marcus McClennan appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

      On February 15, 2019, following the November 24, 2017 shooting death of Ronald Philips, McClennan entered a negotiated guilty plea to third-degree murder[1] and firearms not to be carried without a license.[2] The Honorable Barbara McDermott sentenced McClennan to an aggregate term of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(c).

[2] 18 Pa.C.S.A. § 6106.

imprisonment of fifteen to thirty years. McClennan did not file post-sentence motions or a direct appeal.

On February 12, 2020, McClennan filed a timely *pro se* PCRA petition. The court appointed counsel, who filed an amended petition. The court held an evidentiary hearing over three days on October 19, 2020, October 27, 2020, and November 23, 2020.[3] Following the hearing, during which a videotape of Homicide Detective James Crone's interview with McClennan was played, and at which both McClennan and trial counsel testified, the PCRA court dismissed McClennan's petition. McClennan filed this timely appeal. Both McClennan and the PCRA court complied with Pa.R.A.P. 1925.

McClennan raises the following issues for our review:

1. Did the PCRA court err when it found that counsel was not constitutionally ineffective under the Sixth Amendment of the U.S. Constitution and Article 9, section 1, and Article 5, section 9 of the Pennsylvania Constitution for advising [McClennan] to plead guilty when that advice was so legally deficient because counsel had failed to properly review the discovery, investigate and prepare for trial and failed to communicate with [McClennan] by phone or letter and only met with [McClennan] for a minimal amount of time in person, and thus his overall failure to prepare for trial and advice to [McClennan] to plead guilty to [t]hird[-d]egree [m]urder was not within the range of competence demanded of attorneys in criminal cases and thus, [McClennan's] plea was not knowingly and intelligently made?

2. Did the PCRA court err when it found that counsel was not constitutionally ineffective under the Sixth Amendment of the U.S. Constitution and Article 9, section 1, and Article 5, section 9 of the Pennsylvania Constitution for failing to

---

[3] Due to COVID-19 restrictions, McClennan attended the hearing virtually.

- 2 -

identify, prepare, file and litigate a pretrial motion to suppress certain oral statements made by [McClennan] based on that interview violating [McClennan's] [c]onstitutional rights under the U.S. Constitution and Pennsylvania Constitution because of racial bias of the homicide detective conducting the interview which had caused that detective to be removed from [the] homicide unit while this matter was pending and was widely reported in the Philadelphia area?

Appellant's Brief, at 7-8.

McClennan argues that counsel was ineffective for inducing him to plead guilty and for not filing a motion to suppress statements he made in his interview with Detective Crone. After review, we conclude McClennan is not entitled to relief.

When reviewing the PCRA court's denial of post-conviction relief, we must determine whether the court's findings are supported by the record and free of legal error. *Commonwealth v. Treiber*, 121 A.3d 435, 444 (Pa. 2015). In doing so, we accord great deference to the PCRA court's credibility determinations, and, where supported by the record, they are binding on this Court. *Id.*

To be entitled to relief on a claim of ineffectiveness of counsel, a PCRA petitioner must establish all three prongs of the ineffective assistance of counsel test set forth in *Commonwealth v. Pierce*, 527 A.2d 973, 975–76 (Pa. 1987). A petitioner must demonstrate: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) [the petitioner] suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the

- 3 -

result of the proceeding would have been different." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011). We begin with the presumption that counsel rendered effective assistance. ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010).

Where the underlying ineffectiveness implicates a guilty plea, such a claim provides relief only "if the ineffectiveness caused an involuntary or unknowing plea." ***Commonwealth v. Diaz***, 913 A.2d 871, 872 (Pa. Super. 2006). This test is analogous to "the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a guilty plea." ***Id.*** Because "a plea of guilty effectively waives all non-jurisdictional defects and defenses," ***Commonwealth v. Gibson***, 561 A.2d 1240 (Pa. Super. 1989), "after sentencing, allegations of ineffectiveness of counsel in this context provide a basis for withdrawal of the plea only where there is a causal nexus between counsel's ineffectiveness, if any, and an unknowing or involuntary plea." ***Commonwealth v. Turiano***, 601 A.2d 846 (Pa. Super. 1992).

As this Court has explained:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011). Additionally, a written plea colloquy that is read, completed, and signed by the defendant, and made part of the record, may serve as the defendant's plea colloquy when supplemented by an oral, on-the-record examination. *Commonwealth v. Morrison*, 878 A.2d 102, 108-09 (Pa. Super. 2005), citing Pa.R.Crim.P. 590, cmt.). Moreover, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 522–23 (Pa. Super. 2003).

Here, McClennan claims that instead of pursuing a negotiated plea to third-degree murder, counsel should have pursued a plea to voluntary manslaughter. McClennan contends that the evidence that the victim had fired his gun twice would have supported the defense of "imperfect self-defense."

McClennan's claim does have arguable merit. The evidence showed that both McClennan and the victim fired shots; McClennan fired at least six shots, one of those resulting in the death of the victim, and the victim fired two shots. Counsel acknowledged that McClennan had a "viable justification defense." N.T. PCRA Hearing, 10/19/20, at 47; N.T. Guilty Plea Hearing, 2/15/19, at 24. At the evidentiary hearing, counsel testified that he reviewed with McClennan the relative strengths and weaknesses of his case and potential defenses. Counsel testified that he believed McClennan had a viable self-defense claim; however, he advised McClennan that there was evidence that could defeat

that claim, which would result in a conviction of first-degree murder.

Specifically, counsel testified that:

> There was evidence that [McClennan] fled the scene immediately. He remained on the lam or on the run for over six months. When he was arrested again,[4] he ran again.[5] Justification is an affirmative defense. [McClennan] would have had to testify in this matter and get on the stand. I don't think he was going to make a great witness. There was [a] number of reasons with those factors that I thought – and [] as I always explained to Mr. McClennan, you can't predict anything. And as I said, he had a viable justification defense. What it came down to was when the offer from the Commonwealth was a plea to third, and he was a young man at the time, he was 25, in which he would serve 15 to 30, as opposed to the possibility of a life in prison and [] he decided to take the deal after my recommendation.

*Id.* Counsel continued:

> [W]hat I told him was that he had a justification defense. It wasn't even a bad justification defense because, as we discussed, we can clearly demonstrate that the victim in this case had a weapon and had fired his weapon twice. I told him that there were other factors to consider in putting up a justification defense and, although we had one, it was not, at the same time, the strongest justification defense. And there was the possibility he could lose. And if he lost and was convicted of first-degree murder, he would be facing life in prison. That was the discussion. . . . Almost every time we discussed the matter either in person or on the phone, we talked about justification. . . . **I impressed upon him that, with the facts of the case, he certainly had a viable justification defense. It was not my recommendation to go with that if we could get an acceptable offer from the Commonwealth.** As I always told Mr. McClennan, I worked for

---

[4] McClennan had a prior arrest for a domestic dispute involving the mother of his child; that case was pending when police arrested him in the instant matter. *See* N.T. PCRA Hearing, 11/23/20, at 30-32.

[5] When the police came to arrest McClennan, he jumped out a second-story window. *See* N.T. PCRA Hearing, 11/23/20, at 46-47.

him and whatever he wanted to do, whether it was to plead guilty or take the case to trial, I would do that for him and fight for him. And part of my job as his attorney is to lay out options, and one of those options was to get the best possible offer from the Commonwealth[.] And, ultimately, when we had an offer, which was 15 to 30 on third-degree murder, as opposed –and to give him my opinion as to should he take the plea or go to trial with a justification defense, it was my recommendation at that point that he should take the plea.

*Id.* at 27-29.

When asked specifically why he did not propose a negotiated guilty plea to voluntary manslaughter, counsel replied that he did not think the facts "supported a plea to voluntary manslaughter." *Id.* at 50. Essentially, McClennan takes issue with counsel's failure to start the negotiation from a better position, that is, voluntary manslaughter. As we read the testimony, counsel believed that would be fruitless. Counsel testified:

I asked the Commonwealth for an offer on third degree to 15 to 30, they responded, they made an offer of third degree of 15 to 30. I conveyed that to Mr. McClennan. Mr. McClennan instructed me to go back and try to get a better offer. I went back and attempted to get a better offer, and I was told the best offer that was forthcoming was 15 to 30 on third, and then I presented him with the option of the plea or going to trial.

N.T. PCRA Hearing, 10/19/20, at 83. *See also id.* at 56 (counsel testifying, "He wanted less than 15 to 30. I don't have a specific memory of what that number was or what I asked for. I had that conversation with the Commonwealth. **The Commonwealth told me that their best offer was third degree and 15 to 30.** I went back, conveyed that to Mr. McClennan. . . . And, ultimately, Mr. McClennan, as we got closer, made the determination,

which was to accept the offer made by the Commonwealth.")(emphasis added).

Further, counsel considered the possible defense of imperfect self-defense, but was not optimistic that it could be successfully proven. Counsel explained that he entertained a plea bargain because there was other evidence that undermined self-defense and raised the specter of a first-degree murder conviction. *See id.* at 78 (counsel testified there were witness statements indicating McClennan was the initial aggressor, that McClennan "came out and began firing"); *id.* at 86 (witness Daniele Sutton's statement to police was that as soon as McClennan came out of abandoned house, McClennan started shooting at victim); *id.* at 88 (witness Alexus Hunter's statement to police indicated McClennan was at doorway of abandoned house when he started shooting at victim); *id.* at 97 (there was evidence that McClennan told victim's niece on night before shooting that he was going to shoot victim).

In summary, counsel noted the following as weakening a possible self-defense claim: McClennan's previously-declared readiness to shoot somebody the night before the shooting; the six bullets he fired, his flight, and the fact that two eyewitnesses stated that he fired first at the victim. *See* N.T. PCRA Hearing, 10/19/20, at 27–29, 46–48, 86–89, 92–97; N.T. PCRA Hearing, 10/27/20, at 8-9.

At the guilty plea hearing, the court engaged McClennan in a thorough oral colloquy, and McClennan stated that he understood the rights he was

giving up. *See* Guilty Plea Colloquy, *supra* at 3-26. McClennan acknowledged the factual basis of his plea as follows:

On the evening of November 23, 2017, 18-year-old Alexus [] Hunter and the defendant got into a verbal argument, during which the defendant told Ms. Hunter to mind her business and that he didn't care who had a permit to carry, he would shoot them. During that argument, the defendant did pull out a silver semiautomatic handgun. The following day, November 24, 2017, Ms. Hunter and her mother were on the 4500 block of Gratz Street. [] Ms. Hunter and her mother were talking to their cousin, who is the decedent, Ronald Phillips, who was 42 years old at the time of his death. They talked to him about what was happening the night before. The defendant started walking towards them, yelling at the decedent. The decedent and the defendant had known each other prior to this day. The defendant went into an abandoned house across the street, a house that witnesses have seen him in before. The defendant then exited that home and began firing from the front porch at the decedent[,] who was on the sidewalk across the street. The decedent was attempting to get cover behind an SUV that was parked on the street. The decedent also had his firearm, which he was licensed to carry, [had] a valid permit to carry, and the decedent fired back. The decedent was struck in the left side of his head. [Fired cartridge casings] from the scene showed that the defendant shot at least six times and the decedent shot twice.

*Id.* at 23-25. Moreover, McClennan answered affirmatively when questioned whether counsel had answered all his questions, whether he was satisfied with counsel's representation, and, more tellingly, whether counsel had reviewed potential defenses to the charges against him. *Id.* at 15. McClennan also signed a written guilty plea colloquy form. *See* Written Guilty Plea Colloquy, 2/15/19.

The PCRA court found both credible and reasonable counsel's testimony that, given the legitimate risk of a conviction of first-degree murder and life

imprisonment, a plea to third-degree murder represented the best option. The court also found McClennan's testimony not credible. ***See*** N.T. PCRA Hearing, 11/23/20, at 142 ("I don't believe the petitioner on most of what he said. It's just not supported by the record."). ***See also Treiber***, ***supra*** at 444 (we accord great deference to PCRA court's credibility determinations, and, where supported by record, are binding on this Court).

Based on our review of the record, we conclude that McClennan's claim, though of arguable merit, does not amount to ineffectiveness of counsel. Counsel had a reasonable basis for believing justification was not supported by the facts and evidence, and for recommending McClennan not take the risk of conviction and a life sentence. ***Chmiel***, ***supra***; ***Pierce***, ***supra***. ***See Commonwealth v. Keaton***, 45 A.3d 1050, 1061 (Pa. 2012) ("Failure to establish any prong of the test will defeat an ineffectiveness claim."). The record supports the court's determination that plea counsel was effective. ***Treiber***, ***supra***.

Next, McClennan claims counsel was ineffective for failing to file a motion to suppress his statement made to Detective Crone. McClennan argues Detective Crone did not properly advise him of his ***Miranda***[6] rights. Additionally, McClennan, who is African American, claims Detective Crone was racially biased against him. These claims are meritless.

---

[6] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

First, at the guilty plea hearing, McClennan acknowledged that he understood the rights he was waiving. *See* N.T. Guilty Plea Hearing, *supra* at 9-13. As part of his agreement to plead guilty, McClennan agreed to forego the right to file any pre-trial motions and defenses. *See* Written Guilty Plea Colloquy, 2/15/19, at 2.

Further, McClennan argues that his statement, in which he denied committing the shooting or being at the scene of the shooting, or knowing the victim, should have been suppressed. McClennan does not explain, however, why counsel was ineffective for failing to file a motion to suppress this statement other than to suggest, in hindsight, that his statement would defeat his claim of imperfect self-defense. Detective Crone's thirty-minute interview with McClennan on February 7, 2018– the day after he arrested– was captured on videotape, which showed Detective Crone informed McClennan of his *Miranda* rights and McClennan waived his rights. *See* Trial Court Opinion, 2/22/21, at 8 ("The video recording shows that [McClennan] was properly *Mirandized* by Detective Crone. Detective Crone informs [McClennan] of his right and [McClennan is seen signing a *Miranda* card."). The fact that Detective Crone was removed from the homicide unit after the interview, in August of 2018 for sending a racially charged memo (prior to the interview) to an African American colleague, did not affect the validity of the *Miranda* warnings, nor did it affect the validity of McClennan's plea. *See Yeomans*, *supra*. We agree with the trial court that a motion to suppress would have been frivolous. Counsel will not be found ineffective for failing to raise a

meritless claim. ***Commonwealth v. Washington***, 927 A.2d 586, 603 (Pa. 2007).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/02/2022